Case No. 22-15278

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

PATRICIA LOPEZ, et al.,
Plaintiffs-Appellees,
vs.
CITY OF MESA, et al.
Defendants-Appellants,
_____

## APPELLEES' ANSWERING BRIEF
_____

Appeal from the United States District Court for the District of Arizona
No. 2:19-cv-04764-DLR
Hon. Douglas L. Rayes
_____

Dale K. Galipo, CA Bar No. 144074
*dalekgalipo@yahoo.com*
Renee V. Masongsong, CA Bar No. 281819
*rvalentine@galipolaw.com*
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367
Tel:  (818) 347-3333
Fax:  (818) 347-4118

Michael P. Grubbs
AZ Bar No. 033734
*mgrubbs@warnocklaw.com*
WARNOCK MACKINLAY LAW
7135 E. Camelback Rd., F-240
Scottsdale, AZ 85251
Tel:  (602) 354-2503

*Counsel for Plaintiffs-Appellees Patricia Lopez and Caesar Lopez*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................3

INTRODUCTION...................................................................................1

THIS COURT LACKS JURISDICTION......................................................4

STANDARD OF REVIEW ......................................................................4

ISSUES PRESENTED ...........................................................................5

STATEMENT OF THE CASE..................................................................6

STATEMENT OF FACTS........................................................................7

    A.    BACKGROUND ..........................................................................7

    B.    AT THE TIME OF THE SHOOTING, NO PERSON WAS IN THE PATH OF THE STOPPED VEHICLE ....................................................8

    C.    POLICE TRAINING ON THE USE OF DEADLY FORCE ...........................12

    D.    POLICE TRAINING ON SHOOTING AT VEHICLES AND THEIR DRIVERS ...............................................................................13

    E.    THE SHOOTING WAS EXCESSIVE AND UNREASONABLE.......................15

SUMMARY OF ARGUMENT....................................................................18

ARGUMENT.........................................................................................20

    I.    THIS COURT DOES NOT HAVE JURISDICTION WHERE FACTUAL ISSUES GENUINELY IN DISPUTE PRECLUDE SUMMARY JUDGMENT. ....................................................................20

    III.    THE DISTRICT COURT APPROPRIATELY DENIED QUALIFIED IMMUNITY WITH RESPECT TO APPELLEES' FEDERAL CLAIMS...........26

        A.    THE SHOOTING WAS EXCESSIVE AND UNREASONABLE...........28

        B.    THE SHOOTING VIOLATED THE FOURTEENTH AMENDMENT.............................................................31

        C.    QUALIFIED IMMUNITY MUST BE DENIED UPON A FINDING OF DISPUTED ISSUES OF MATERIAL FACT .................34

        D.    THE SHOOTING VIOLATED CLEARLY ESTABLISHED LAW....................................................................36

    E.    City of Mesa Policies Further Support the Obviousness that the Law Was Clearly Established. ..................................................................41

IV.    The District Court Appropriately Denied Summary Judgment as to Appellees' Battery Claim ...................................42

CONCLUSION.................................................................................44

# <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

<u>Cases</u>

*A.D. v. California Highway Patrol*,
  712 F.3d 446 (9th Cir. 2013) ................................................................ 33, 38

*Acosta v. City & Cnty. of San Francisco*,
  83 F.3d 1143 (9th Cir. 1996) ...........................................................39

*Adams v. Speers*,
  473 F.3d 989 (9th Cir. 2007) ...........................................................19

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970)...........................................................34

*Anderson v. Creighton*,
  483 U.S. 635 (1987)............................................................... 35, 36, 37

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................23

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...........................................................38

*Behrens v. Pelletier*,
  516 U.S. 299 (1996)...........................................................20

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ...........................................................24

*Brosseau v. Haugen*,
  543 U.S. 194 (2004)............................................................... 35, 37

*Bryan v. McPherson*,
  630 F.3d 805 (9th Cir. 2010) ...........................................................28

*Butz v. Economou*,
  438 U.S. 478 (1978)...........................................................27

*C.E.W. v. City of Hayward*,
  2015 WL 1926289 (N.D. Cal. Apr. 27, 2015)...........................................................32

*Chew v. Gates*,
  27 F.3d 1432 (9th Cir. 1994) ...........................................................41

*Collins v. Jordan*,
  110 F.3d 1363 (9th Cir. 1996) ...........................................................4

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)................................................................27

*Cunningham v. City of Wenatchee*,
    345 F.3d 802 (9th Cir. 2003) ...................................... 20, 21, 24, 34

*Cunningham v. Gates*,
    229 F.3d 1271 (9th Cir. 2000) ................................................26

*Deorle v. Rutherford*,
    272 F.3d 1272 (9th Cir. 2001) ......................................... 29, 37

*Drummond v. City of Anaheim*,
    343 F.3d 1052 (9th Cir. 2003) ................................................41

*Duenez v. City of Manteca*, 2013 WL 6816375 (E.D. Cal. Dec. 23, 2013) ...........32

*Espinosa v. City & Cnty. of S.F.*,
    598 F.3d 528 (9th Cir. 2010) ........................................... 28, 34

*Est. of Lopez by & through Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017) ........................................... 20, 37

*Flores v. Morgan Hill Unified Sch. Dist.*,
    324 F.3d 1130 (9th Cir. 2003) ................................................37

*Frudden v. Pilling*,
    877 F.3d 821 (9th Cir. 2017) ...................................................5

*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013) .................................................32

*Glenn v. Washington Cnty.*,
    673 F.3d 864 (9th Cir. 2011) ........................................... 28, 34

*Gonzales v. Anaheim*,
    747 F.3d 789 (9th Cir. 2014) .................................................25

*Gonzalez [v. City of Anaheim*,
    747 F.3d 789 (9th Cir. 2014) .................................................23

*Graham v. Connor*,
    490 U.S. 386 (1989)................................................................28

*Greer v. City of Hayward*,
    229 F. Supp. 3d 1091 (N.D. Cal. 2017)........................................32

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)...................................................... 27, 36, 41

*Haugen v. Brosseau*,
    339 F.3d 857 (9th Cir. 2003) .................................................38

*Headwaters v. County of Humboldt*,
    240 F.3d 1185 (9th Cir. 2000) ....................................................................31

*Hernandez v. City of San Jose*,
    897 F.3d 1125 (9th Cir. 2018) ...................................................................26

*Hope v. Pelzer*,
    536 U.S. 730 (2002)........................................................... 27, 37, 38, 41

*Hulstedt v. City of Scottsdale*,
    884 F. Supp. 2d 972 (D. Ariz. 2012) .......................................................42

*Isayeva v. Sacramento Sheriff's Dep't*,
    872 F.3d 938 (9th Cir. 2016) ....................................................................21

*Jeffers v. Gomez*,
    267 F.3d 895 (9th Cir. 2001) ....................................................................24

*Johnson v. Jones*,
    515 U.S. 304 (1995)............................................................ 4, 20, 21, 34

*K.H. Through Murphy v. Morgan*,
    914 F.2d 846 (7th Cir. 1990) ....................................................................37

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006) ...................................................................21

*Kirby v. Duva*,
    530 F.3d 475 (6th Cir. 2008) ....................................................................39

*Knox v. Southwest Airlines*,
    124 F.3d 1103 (9th Cir. 1997) ...................................................................35

*Kosakoff v. City of San Diego*,
    No. 08-CV-1819, 2010 WL 1759455 (S.D. Cal. Apr. 29, 2010) .................39

*Maropulos v. Cnty. of Los Angeles*,
    560 F.3d 974 (9th Cir. 2009) .................................................................4, 20

*Meredith v. Erath*,
    342 F.3d 1057 (9th Cir. 2003) ...................................................................28

*Millender v. Cnty. of Los Angeles*,
    564 F.3d 1143 (9th Cir. 2009) ...................................................................27

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)...................................................................................20

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015).................................................................................39

*Olsen v. Idaho State Bd. of Medicine*,
    363 F.3d 916 (9th Cir. 2004) ......................................................................5

*Ortiz v. Jordan*,
 562 U.S. 180 (2011) ...................................................................... 23

*Porter v. Osbourne*,
 546 F.3d 1131 (9th Cir. 2008) ..................................................... 31

*Puente Ariz. v. Arpaio*,
 821 F.3d 1098 (9th Cir. 2016) ..................................................... 26

*Roybal v. Toppenish Sch. Dist.*,
 871 F.3d 927 (9th Cir. 2017) ........................................................ 4

*Ryan v. Napier*,
 245 Ariz. 54, 425 P.3d 230 (2018) .............................................. 44

*Santos v. Gates*,
 287 F.3d 846 (9th Cir. 2002) ....................................................... 34

*Saucier v. Katz*,
 533 U.S. 194 (2001) ...................................................................... 27

*Scott v. Harris*,
 550 U.S. 372 (2007) ...................................................................... 28

*Scott v. Henrich*,
 39 F.3d 912 (9th Cir. 1994) ......................................................... 25

*SEC v. Capital Consultants LLC*,
 453 F.3d 1166 (9th Cir. 2006) ..................................................... 26

*Smith v. City of Hemet*,
 394 F.3d 689 (2005) ...................................................................... 29

*Smith v. Cupp*,
 430 F.3d 766 (6th Cir. 2005) ....................................................... 39

*Sorrels v. McKee*,
 290 F.3d 965 (9th Cir. 2002) ....................................................... 37

*Tennessee v. Garner*,
 471 U.S. 1 (1985) .......................................................................... 39

*Torres v. City of Madera*,
 648 F.3d 1119 (9th Cir. 2011) ................................................ 27, 29

*Villanueva v. California*,
 986 F.3d 1158 (9th Cir. 2021) ................................................ 38, 40

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) ..................................................... 37

*Wilkins v. City of Oakland*,
 350 F.3d 949 (9th Cir. 2003) ....................................................... 35

*Wilkinson v. Torres*,
    610 F.3. 546 (9th Cir. 2010) ................................................................. 23, 40

## **<u>Statutes</u>**

A.R.S. § 13-409 ........................................................................................39

A.R.S. § 13-410 ........................................................................................39

## **INTRODUCTION**

This case arises out of the July 21, 2018 shooting of Anthony Lopez ("Mr. Lopez") by City of Mesa Police Department Officer Heath Carroll ("Officer Carroll"). On that date, Officer Carroll fired nine shots at Mr. Lopez in rapid succession without giving Mr. Lopez a verbal warning that deadly force would be used, when Mr. Lopez was seated in a stationary vehicle with no person in the vehicle's path, killing him. In ruling on Defendants'-Appellants' motion for summary judgment, the district court properly denied qualified immunity to Officer Carroll after acknowledging numerous disputes of material fact bearing on the key issue in this case—whether the shots fired by Officer Carroll violated Mr. Lopez's constitutional rights. This Court has consistently held that an order denying qualified immunity on the basis of disputed issues of material fact is not a final, immediately appealable order. Accordingly, this Court should dismiss this appeal for lack of jurisdiction. This Court should also decline to exercise pendant jurisdiction over the district court's denial of summary judgment as to Appellees' battery claim, as qualified immunity does not apply to state law claims.

Alternatively, this Court should affirm the district court's denial of qualified immunity and summary judgment because all the shots fired by Officer Carroll were excessive and unreasonable, violating Mr. Lopez's rights under the Fourth Amendment and Arizona law. Officer Carroll's shooting also interfered with

Appellees' familial relationship with Mr. Lopez, in violation of the Fourteenth Amendment. On Appellees' facts—which this Court must accept as true both in determining whether the shooting was excessive and unreasonable and whether Officer Carroll is entitled to qualified immunity—this was not an immediate defense of life situation. At the time of the shooting, Mr. Lopez's vehicle was stopped, and no person was about to be struck by the vehicle or in the path of the vehicle. Therefore, there was no reason to shoot. This was not a high-speed chase. Mr. Lopez reversed his vehicle a short distance in response to Officer Carroll suddenly pointing his Taser at Mr. Lopez without warning. Further, at the time of the shooting, the law was clearly established that shooting at a stopped or slow-moving vehicle where the vehicle and its driver pose no immediate threat of death or serious bodily injury, particularly where the officer gives no verbal warning that deadly force will be used, would violate the constitution.

As the district court correctly found, an objectively reasonable officer in Officer Carroll's position would not have believed that his partner officer, Jena Thranum ("Officer Thranum"), was under Mr. Lopez's vehicle at any point and would not have used lethal force during this incident. Officer Carroll did not state that he thought Officer Thranum was underneath Mr. Lopez's vehicle until after he consulted with attorneys, and the following circumstantial evidence shows that Officer Carroll fabricated this story in an effort to justify his unlawful shots: Police

officers, including Officer Carroll and Thranum, are trained, pursuant to basic police training and the Mesa Police Department policy on the use of firearms, to remain out of the path of a vehicle they think might move and further trained that if a vehicle does move toward them, to move out of the vehicle's path instead of shooting at the driver. When Officer Thranum anticipated Mr. Lopez's vehicle reversing, she followed her police training and stepped further to the driver side of Mr. Lopez's vehicle, into the left turn lane, and back, toward her patrol vehicle. Mr. Lopez's vehicle reversed straight back, and it would not have been physically possible for Officer Thranum to be struck by or dragged under the vehicle. Officer Thranum continued backing up as Lopez's vehicle reversed, and at the time of the shooting, Officer Thranum was approximately eight feet from the driver side of Mr. Lopez's vehicle and back at her patrol vehicle in a position of safety. Officer Carroll did not see Mr. Lopez's vehicle strike Officer Thranum, did not see Officer Thranum go to the ground, and did not hear Officer Thranum scream as if she'd been struck by the vehicle. After the shooting, Officer Carroll did not look under Mr. Lopez's vehicle to see if Officer Thranum was under the vehicle. Officer Carroll heard Officer Thranum making dispatches immediately after the shooting, and he did not think that Officer Thranum was under Mr. Lopez's vehicle when she was making those dispatches. Mr. Lopez was not attempting to flee, nevertheless, under the facts of this case, it would be inappropriate to shoot Mr.

3

Lopez for fleeing or attempting to flee. Therefore, if this Court does not dismiss Appellants' appeal for lack of jurisdiction, then it should affirm the district court's appropriate denial of summary judgment and qualified immunity.

## THIS COURT LACKS JURISDICTION

As further explained below, the district court's order denying summary judgment with respect to qualified immunity was premised on the determination that material factual issues were genuinely in dispute. (1-ER at 7:16-20, 9:4-7, 12:19-26). Therefore, this Court lacks jurisdiction over this interlocutory appeal. *See, e.g.*, *Maropulos v. Cnty. of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) (holding that "an order denying qualified immunity on the ground that a genuine issue of material fact exists is not a final, immediately appealable order"); *see also Johnson v. Jones*, 515 U.S. 304, 313-20 (1995); *Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1996). Further, the district court's denial of Appellants' motion for summary adjudication with respect to Plaintiffs' battery claim is not a final, immediately appealable order because it did not end the litigation on the merits.

## STANDARD OF REVIEW

Denial of summary judgment based on qualified immunity is reviewed *de novo*. *See Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017). The Appellate Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and

whether the district court correctly applied the relevant substantive law. *See Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017); *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004).

## ISSUES PRESENTED

1.     This Court has consistently held that it lacks jurisdiction on appeal where the district court denied summary judgment based on disputed issues of material fact.  Here, the district court that found triable issues of fact exist as to whether the shooting was excessive and unreasonable. Does this Court lack jurisdiction to hear Appellants' instant Appeal based on qualified immunity?

2.     Qualified immunity does not apply to Appellees' battery claim, and qualified immunity can be decided without considering Appellees' battery claim. Should this Court decline to exercise pendant jurisdiction to hear Appellants' instant Appeal based on the district court's denial of Appellees' battery claim?

3.     This Court has consistently held that summary judgment should be denied where triable issues of fact exist. Here, the district court found triable issues of fact as to whether the shooting was excessive and unreasonable, violating the Fourth and Fourteenth Amendments. Was the district court correct in denying summary judgment in the face of disputed issues of material fact?

4.     At the time of the incident giving rise to this appeal, the law was clearly established that shooting at a stopped or slow-moving vehicle where the

vehicle and its driver pose no immediate threat of death or serious bodily injury constitutes excessive force. Assuming Appellees' facts as true, including that the shooting was not preceded by a pursuit, that Mr. Lopez only reversed his vehicle in response to Officer Carroll pointing his Taser at him without warning, that Mr. Lopez's vehicle was stopped and in park at the time of the shooting, that Officers Carroll and Thranum were to either side of Mr. Lopez's vehicle at the time of the shooting, that no person was in the path of Mr. Lopez's vehicle at the time of the shooting, that neither officer ever went to the ground, and that Officer Carroll did not actually believe that Officer Thranum was under Mr. Lopez's vehicle at any point, was the district court correct in denying qualified immunity to Officer Carroll?

## **STATEMENT OF THE CASE**

This civil rights action arises out of the shooting of Anthony Lopez by Officer Heath Carroll on July 21, 2018. Mr. Lopez died as a result of the gunshots fired by Appellant Carroll and is survived by his parents, Patricia Lopez and Caesar Lopez. Plaintiffs filed their Complaint on July 19, 2019, alleging excessive force in violation of the Fourth Amendment to the United States Constitution, unlawful interference with familial relations in violation of the substantive due process clause of the Fourteenth Amendment, battery, wrongful death. On March 11, 2021, Defendants moved for summary judgment. On August 12, 2021,

Plaintiffs filed oppositions to Defendants' motion for summary judgment. On January 31, 2022, the district court denied summary judgment as to Plaintiffs' claims for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment, interference with familial relations under 42 U.S.C. § 1983 and the Fourteenth Amendment, and battery. Further, the district court denied Officer Carroll's request for qualified immunity on the grounds that triable issues of material fact are present. Appellant City of Mesa is vicariously liable for the conduct of Officer Carroll on Appellees' battery claim.

## STATEMENT OF FACTS

### A. BACKGROUND

Officers Carroll and Thranum were not responding to a serious crime. (SER at 3-01:00-05, 18, 57-58; 2-ER at 53, 119). The officers had never seen Mr. Lopez before and they had no information that he had injured anyone, no information that Lopez was armed, no information that there was a weapon inside the vehicle, and no information that the vehicle was stolen or involved in a crime. (2-ER at 51-53, 57, 119, 121-22, 139). Officer Carroll did not observe Mr. Lopez commit any traffic violations. (2-ER at 57, 116-18). Mr. Lopez never verbally threatened the officers or used profanity with them. (2-ER at 120-21). Mr. Lopez's hands were visibly empty during this incident. (2-ER at 122).

While Mr. Lopez's vehicle was running, Officer Carroll leaned toward the

open front passenger side window and placed his arms/hands inside Mr. Lopez's vehicle. (2-ER at 73-74). Officer Carroll made a poor tactical decision in placing his hands/arms inside of Mr. Lopez's front passenger window, particularly if he were concerned that Mr. Lopez intended to move the vehicle. (SER-60). A reasonable police officer acting consistent with standard police practices would not have drawn, exhibited and pointed his Taser in this matter. (SER at 53). Basic police training teaches that police officers should not tase a person who is operating a vehicle, because doing so could impact the driver's ability to safely operate the vehicle. (SER at 53). Officer Carroll did not warn Mr. Lopez that he was going to Tase him. (2-ER at 97). Officer Carroll inappropriately escalated the situation when he pointed his Taser at Mr. Lopez. (SER-53). Mr. Lopez reversed the vehicle after Carroll pointed his Taser at him. (2-ER at 140, 146; SER at 3-01:02-01:08).

**B. AT THE TIME OF THE SHOOTING, NO PERSON WAS IN THE PATH OF THE STOPPED VEHICLE**

Officer Thranum approached Mr. Lopez's vehicle from the side because she was trained to stay out of the path of a vehicle for officer safety. (2-ER at 58-59). Prior to Mr. Lopez's vehicle reversing, Officer Thranum followed her training and made a prudent tactical decision and moved away from the vehicle, out of its path. (2-ER at 59-60, 74-75, 81; SER at 43, 55). When Officer Thranum thought Mr. Lopez's vehicle might move, she stepped to the west, into the first left-hand turn

lane, and back, in an arching movement. (2-ER at 66; SER at 24, 26-28, 30-31). After the vehicle started to reverse, Officer Thranum followed her training and continued to move backwards, away from Mr. Lopez's vehicle, to keep a safe distance. (2-ER at 82). Officer Thranum was approximately eight feet away from Mr. Lopez's vehicle at the time of the shots and had reached the rear of her patrol vehicle by the last shot. (2-ER at 65-66, 184; SER at 8-01:13-01:16). At the time of the shooting, Officer Thranum was positioned on the driver's side of Mr. Lopez's vehicle, in a position of safety and out of the path of the vehicle, which would make it impossible for the vehicle to strike her, regardless of whether Mr. Lopez drove forward or backwards. (SER at 54-55). When Mr. Lopez's vehicle reversed, it went straight back. (2-ER at 156-57, 171). According to Appellants' expert Timothy Leggett, under the facts of this case, where Mr. Lopez's vehicle went straight back, there is no physical way for Officer Thranum to be pulled under the vehicle. (2-ER at 180-81).

Mr. Lopez's vehicle was stopped at the time of the shooting. (2-ER at 71, 125, 132, 147; SER at 3-01:08, 19-20, 27). After the shooting, the vehicle was found to be in park. (2-ER at 133; SER at 26-27). There is no evidence that any responding officer reached into the vehicle to put it in park after the shooting, indicating that the vehicle may have been in park at the time of the shooting. (2-ER at 162, 185-86). Mr. Lopez's vehicle did not move at any time after it reversed into

Officer Thranum's vehicle. (2-ER-131, 133; SER at 54-55). Officer Carroll did not hear Mr. Lopez's vehicle accelerating during any of the shots. (2-ER at 147). There is no evidence that the tires of Mr. Lopez's vehicle were squealing and no evidence of tire skid marks or debris at the scene. (2-ER at 125, 164-65).

At the time of the shooting, Officer Carroll assumed that Officer Thranum had received police training to move out of the path of a vehicle if she thinks there is a potential risk of being struck by the vehicle. (2-ER at 128). Officer Carroll expects his fellow officers to follow their training, including expecting Officer Thranum to move out of the path of Mr. Lopez's vehicle if she thought she were in the path. (2-ER at 137-38). Immediately prior to the shooting, Officer Carroll last saw Officer Thranum standing on the driver side of Mr. Lopez's vehicle, out of the path of the vehicle. (2-ER at 127-28, 130, 134-36, 154-55; SER at 3-01:04). Officer Carroll did not see any person directly in front of or behind Mr. Lopez's vehicle before it started moving backwards. (2-ER at 130). At the time of the shooting, Officer Carroll was positioned on the passenger's side of Mr. Lopez's vehicle, out of the vehicle's path. (SER at 54-55). Prior to the shooting, Officer Carroll was aware of the general layout of the road and aware that there were no vehicles in the lane to the immediate west of Mr. Lopez's vehicle. (2-ER at 128).

Officer Thranum never went to the ground. (2-ER-56, 86). Officer Thranum was not injured. (2-ER at 55-56). Officer Carroll never heard Officer Thranum

yelling or screaming before he fired. (SER at 26). Officer Carroll never saw Mr. Lopez's vehicle strike Officer Thranum and never saw Officer Thranum underneath Mr. Lopez's vehicle. (2-ER at 56, 135-36; SER at 26). After the shooting, Officer Carroll did not look under Mr. Lopez's vehicle to see if Officer Thranum was under the vehicle. (2-ER at 143; SER at 23). Immediately after the shooting, Officer Carroll heard Officer Thranum making dispatches. (2-ER at 141). Officer Carroll did not state that he thought Officer Thranum was underneath Mr. Lopez's vehicle until after he consulted with attorneys. (2-ER at 142).

Officer Carroll did not go to the ground. (2-ER at 170). Officer Carroll sustained no visual injuries to the outside of his body at the scene. (2-ER at 99, 128, 170). Officer Carroll's statements made immediately following the shooting pertaining to his alleged injury are inconsistent: Directly after the shooting, Officer Carroll told Officer Thranum, "he got my knee." (SER at 3-01:21-01:26). One minute later, Officer Carroll told a responding officer: "He ran over my right leg." (SER at 3-02:22-03:00). Two minutes after that, Officer Thranum asked Officer Carroll if his body-worn camera was still on, and when Officer Carroll said it was, she asked him if Mr. Lopez's vehicle had "run over his foot." (SER-3 at 04:10-04:28). There were no visible tire marks on Officer Carroll's boot. (SER at 45, 47; 2-ER at 168). The video evidence does not show Officer Carroll's boot being run over. (2-ER at 177-78). Officer Carroll failed to issue a verbal warning that deadly

force would be used prior to shooting at Lopez. (2-ER at 99, 133-34). Officer Carroll fired his nine shots in rapid succession, with no pauses between any shots. (SER at 3-01:07-01:10). From the time that Mr. Lopez's vehicle started reversing until the shots were fired, Officer Carroll did not issue any commands. (SER at 27).

## C. POLICE TRAINING ON THE USE OF DEADLY FORCE

Police officers, including Officer Carroll, are trained that deadly force is the highest level of force an officer can use. (2-ER at 100; SER at 14, 50). Police officers, including Officer Carroll, are trained that they can only use deadly force when there is an objectively reasonable belief that there is an immediate threat of death or serious bodily injury. (2-ER at 94, 100; SER at 6, 14-15, 51). Officer Carroll has been trained that if a police officer does not reasonably believe that there is an immediate threat of death or serious bodily injury, then deadly force should not be used. (2-ER at 100; SER at 15-16). Police officers are trained that subjective fear alone is insufficient to justify a use of deadly force. (SER at 17, 51). Police officers are trained to give a warning that deadly force will be used when feasible. (SER at 16, 51). Police officers, including Officer Carroll, are trained to have reverence for human life when deciding whether to use deadly force and are trained to consider their background or backdrop when using their firearm. (2-ER at 100, 103; SER at 51). Officer Carroll was trained that police officers should

control their emotions when using deadly force. (2-ER at 102; SER at 37).

### D. POLICE TRAINING ON SHOOTING AT VEHICLES AND THEIR DRIVERS

Officer Carroll violated City of Mesa Police Department policy and basic police officer training with respect to shooting at vehicles and their drivers when he shot at Lopez while Lopez occupied the driver seat of a vehicle. (SER at 53). Basic police training teaches that deadly force should never be used against a vehicle or its driver unless there is an individual about to be run over and there is no opportunity to get out of the way, which was not the case here. (SER at 54-55). Police officers, including Carroll and Thranum, are trained not to stand in front of or behind a vehicle they think might move. (2-ER at 76-78, 111-12, 115; SER at 23-25, 55). At the time of the shooting, Carroll and Thranum had been trained as police officers that if a vehicle starts moving in their direction, they should step out of the vehicle's path instead of shooting at the driver. (2-ER at 57, 78, 110, 138). At the time of the shooting, Carroll and Thranum had been trained to approach the driver or passenger side windows during traffic stops in case the vehicle were to move forward or backwards. (2-ER at 58, 111-13; SER at 23-25). Based on Carroll's own training, it would be unreasonable to shoot at Lopez under the facts of this case if both he and Thranum were out of the path of Lopez's vehicle, because there would be no immediate threat of death or serious bodily injury. (2-ER at 150).

Mesa Police Department Policy Manual ("DPM") 2.1.20, in effect at the time of the shooting of Mr. Lopez, states: "A Department member shall not discharge a firearm at an occupant of a moving vehicle unless the officer reasonably believes that: the subject poses an immediate threat of death or serious physical injury to the officer or another person; AND there is no reasonable alternative course of action for the officer to prevent the death or serious physical injury." (SER at 6). Mesa police officers, including Carroll and Thranum, are trained that, pursuant to DPM 2.1.20, "if at all possible, an officer threatened by an oncoming vehicle shall move out of its path instead of discharging a firearm at it or any of its occupants. (2-ER at 76-77, 110; SER at 6). Prior to the shooting, Officer Carroll had reviewed Mesa DPM 2.1.20 and understood the policy, including understanding that it applied to him. (2-ER at 105-10). At the time of the shooting, Mesa DPM 2.1.20 stated that "discharging a firearm at a vehicle solely in an attempt to disable the vehicle is generally prohibited. Bullets fired at a moving vehicle are extremely unlikely to stop or disable the moving vehicle." (SER at 6). Basic police training teaches, and Mesa DPM 2.1.20 states, that if the driver of a vehicle is incapacitated, the vehicle would be uncontrolled. Further, shooting at a moving vehicle could create a danger to the public that outweighs the reason the deadly force was initially used. (SER at 6, 53-54). At the time of the incident, Officer Carroll understood Mesa DPM 2.1.20 to mean that firing at the driver of a

vehicle could put the public at risk because incapacitating the driver would affect the driver's ability to safely operate the vehicle. (2-ER at 111).

Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. (SER at 56). Based on his own training, Officer Carroll agrees that it is not appropriate to shoot at a vehicle just for attempting to flee. (2-ER at 150). Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Officer Carroll to shoot at Mr. Lopez for fleeing or attempting to flee. (SER at 51-6). Based on Officer Carroll's training, a police officer cannot shoot someone for the sole reason that the person could possibly be impaired and be a danger to the public; there would still need to be an objectively reasonable belief that the person posed an immediate threat of death or serious bodily injury, and there would also have to be no reasonable alternatives to shooting. (2-ER at 148).

### E. THE SHOOTING WAS EXCESSIVE AND UNREASONABLE

A reasonable officer acting consistent with standard police practices would not have used lethal force in this situation. (SER at 54). At the time of the shooting, it was not the case that Officer Thranum or any other person was about to be run over by Mr. Lopez's vehicle. (SER at 56-57; 2-ER at 175-76, 182). An objectively reasonable officer in Officer Carroll's position would not have believed that

Officer Thranum was underneath Mr. Lopez's vehicle. (SER at 51; 2-ER at 180-81). An objectively reasonable officer in Officer Carroll's position would have known that Officer Thranum would have followed her police training and remained out of the path of Mr. Lopez vehicle. (SER at 55). According to Defendants' police practices expert, Mr. Ijames, if Officer Carroll knew that Officer Thranum was not in a position to be struck by Lopez's vehicle, then it would not have been appropriate to shoot. (SER at 20-21). According to Mr. Ijames, if the factfinder finds that Officer Carroll's belief that Officer Thranum was underneath the car was unreasonable, then that could affect the factfinder's ultimate decision as to whether the use of deadly force was reasonable. (SER-31).

There was a gross lack of situational awareness and fundamental tactical errors on the part of Officer Carroll during this incident. (SER at 60). After the shooting, Officer Thranum was concerned that she could have been struck by Officer Carroll's shots. (SER at 8-05:11-05:38). One of Officer Carroll's rounds entered and exited through the driver's side door of Mr. Lopez's vehicle. (2-ER at 80, 138; SER at 59). If Officer Thranum had not tactically repositioned herself as trained, then she may have been seriously injured or killed by Officer Carroll's shots. (SER at 59). A reasonable officer acting consistent with standard police practices would have given a verbal warning that he was going to fire his service weapon. (SER at 56). Once Carroll observed Lopez put his hand on the gear

16

selector shift, he should have immediately tactically retreated to a position of advantage or to his police vehicle that was only a few feet away and provided verbal commands to Lopez from a position of cover. (SER at 60). Carroll had less-than-lethal options available, including waiting for backup, giving further commands, using the PA system, and allowing Lopez's vehicle to drive through the empty intersection for later apprehension. (SER at 59). In the event that Lopez drove away, the officers could have followed him and, if necessary, pursued him from their police vehicles while requesting assistance from additional MPD officers and/or police helicopter. (SER at 60).

As articulated by Appellees' police practices expert, Scott DeFoe, the shooting was excessive, unreasonable, inappropriate, and contrary to basic police training for the following reasons: (a) Mr. Lopez posed no immediate threat of death or serious bodily injury to any person at the time of the shots; (b) at the time of the shooting, no person was in the path of Mr. Lopez's vehicle or about to be struck by the vehicle; (c) police officers are trained not to stand in the path of a vehicle they think might move, and Officer Carroll should have known that Officer Thranum would follow her training and stay out of the path of Mr. Lopez's vehicle; (d) the only movement Mr. Lopez's vehicle made was reversing a short distance; (e) Mr. Lopez's vehicle was stopped at the time of the shooting; (f) at the time of the shooting, Mr. Lopez's vehicle was pinned in from behind by Officer

Thranum's vehicle; (g) police officers are trained not to shoot at the driver of a vehicle, and the shooting violated Officer Carroll's own training and Mesa Police Department policy with respect to shooting at vehicles and their drivers; (h) a subjective fear is insufficient to justify a use of deadly force; (i) Mr. Lopez committed no serious crime; (j) Mr. Lopez did not have a firearm or other weapon; (k) Officer Carroll failed to give Mr. Lopez a verbal warning that deadly force would be used, even though it would have been feasible to do so under the facts of this case; (l) police officers are trained that they must justify every shot, and all of Officer Carroll's nine shots were unjustified; (m) Officer Carroll failed to consider his background when he fired; (n) police officers are trained to show a reverence for human life, and Officer Carroll showed no reverence for human life when he fired at Mr. Lopez; and (o) police officers are trained that they cannot shoot at a vehicle or its driver simply because the vehicle is trying to flee or leave the area. (SER at 56-60).

## **SUMMARY OF ARGUMENT**

The district court properly denied summary judgment after viewing the facts in the light most favorable to the non-moving party and acknowledging numerous disputes of material fact bearing on whether the shots fired by Officer Carroll were excessive and unreasonable. (1-ER at 7, 8, 12:17-21). This Court does not have jurisdiction over the instant appeal because the district court's denial of summary

judgment was premised on the presence of disputed issues of material fact. The district court correctly found that Officer Carroll is not entitled to qualified immunity because a reasonable jury could find that the shooting violated Mr. Lopez's constitutional rights. On Appellees' facts, the shooting was not preceded by a pursuit, Mr. Lopez only reversed his vehicle in response to Officer Carroll pointing his Taser at him without warning, Mr. Lopez's vehicle was stopped and in park at the time of the shooting, Officers Carroll and Thranum were to either side of Mr. Lopez's vehicle at the time of the shooting, no person was in the path of Mr. Lopez's vehicle at the time of the shooting, neither officer ever went to the ground, and Officer Carroll did not actually believe that Officer Thranum was under Mr. Lopez's vehicle at any point. If this Court does not dismiss the instant appeal for lack of jurisdiction, then these are the facts that this Court must assume are true in determining which prior cases are instructive in determining whether the law was clearly established. On Appellees' facts, Mr. Lopez's vehicle was stopped and in park at the time of the shooting, and no person was in the path of his vehicle or about to be struck by his vehicle, placing this case "within the obvious." *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007). Further, the law was clearly established that it is unconstitutional to shoot at a stopped or slow-moving vehicle or its driver without warning when there is no immediate threat of death or serious bodily injury. The district court correctly determined that Officer "Carroll 'cannot

19

credibly argue that the prohibition on the use of deadly force under those circumstances was not clearly established' at the time of the shooting." (1-ER at 8:7-8). "There need not be a prior case 'directly on point,' so long as there is precedent 'plac[ing] the statutory or constitutional question beyond debate.' *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1017 (9th Cir. 2017)." (1-ER at 7:24-28).

## **ARGUMENT**

### I. **THIS COURT DOES NOT HAVE JURISDICTION WHERE FACTUAL ISSUES GENUINELY IN DISPUTE PRECLUDE SUMMARY JUDGMENT.**

This Court must first address whether it has jurisdiction over the instant interlocutory appeal, guided by the Supreme Court's decisions in *Behrens v. Pelletier*, 516 U.S. 299 (1996), *Johnson v. Jones*, 515 U.S. 304 (1995), and *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985). *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 806-07 (9th Cir. 2003) ("Interlocutory appeals are not available when the appellate court is required to resolve a 'fact-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.'") (quoting *Johnson*, 515 U.S. at 307); *see also Maropulos*, 560 F.3d at 975 (holding that an order denying qualified immunity on the ground that a genuine issue of material fact exists is not a final, immediately appealable order). For this Court to hear Defendants-Appellants' instant appeal, Officer Carroll and the City of Mesa "must present [this

Court] with a legal issue that does not require the [C]ourt to 'consider the correctness of [Appellees'] version of the facts. . .'" 345 F.3d at 807 (quoting *Johnson*, 515 U.S. at 312). "Where the case involves the sufficiency of the evidence of plaintiff's proof, the mere fact that a defense of qualified immunity is also included does not in itself provide a jurisdictional basis of appeal." *Id.* at 809.

Here, the only legal issue that Appellant Carroll arguably presents—whether the law was clearly established that the shooting was excessive and unreasonable under Appellees' version of the facts—requires this Court to "consider the correctness of [Appellees'] version of the facts." *Cunningham*, 345 F.3d at 807. A defendant may only appeal a court's denial of qualified immunity on the basis that his conduct did not violate clearly established law if the defendant assumes the plaintiff's version of the facts. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945-46 (9th Cir. 2016); *Cunningham*, 345 F.3d at 807. Here, Officer Carroll continues to dispute Appellees' version of the facts, and there are credibility issues surrounding Officer Carroll's version of the facts. The City of Mesa presents no legal issue. Qualified immunity does not apply to Appellees' battery claim, and Appellant City of Mesa appeals the district court's denial of summary judgment on Appellees' battery claim purely on the basis of disputed issues of fact. Therefore, this Court does not have jurisdiction to hear Appellants' instant appeal. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060 (9th Cir. 2006) (dismissing an

interlocutory appeal for lack of jurisdiction because "the denial of qualified immunity in this case is not based on issues of law, but rather on genuine issues of material fact.").

In determining whether Officer Carroll used excessive deadly force, the most important factor is whether a reasonable police officer in Officer Carroll's position had an objectively reasonable belief that Mr. Lopez or his vehicle posed an immediate threat of death or serious bodily injury to Officers Carroll or Thranum, or to others, at the time of the shooting. Here, the district court appropriately found that material facts bearing on this important factor are disputed, stating:

> [M]aterial facts[] are disputed. First, it is disputed whether Carroll actually harbored the mistaken belief that Thranum was in harm's way. Carroll contends that he believed Thranum lay beneath the Sorento because he lost sight of her when the vehicle. reversed. (Doc. 67 at 6.) Plaintiffs argue that a reasonable jury could find Carroll's testimony not credible based on the video footage because (1) Carroll did not check underneath the Sorento immediately after the shooting and (2) he fired the nine shots in a direction that would have risked shooting anyone who lay underneath the Sorento. (Doc. 71 at 6, 9, 11.) The Court agrees. A reasonable jury could agree with Plaintiffs' interpretation of the evidence and find that Carroll did not actually fear that Thranum was in harm's way.
>
> Second, even if a jury were to find that Carroll actually believed Thranum was in jeopardy, it might find the belief unreasonable. From the bodycam footage, Plaintiffs point out that (1) Thranum never placed her limbs inside the Sorento; (2) Thranum followed her training by staying out of the Sorento's path as she retreated to safety behind her patrol vehicle; (3) Thranum never made any noises of pain; and (4) the Sorento was stopped when Carroll fired the nine shots. (Doc. 71 at 12.) Based on this evidence, a jury could conclude that an

> objectively reasonable officer would or should have accurately
> perceived that Thranum was not in the Sorento's path.
>
> Based on the competing inferences a jury could draw from the
> bodycam footage, the Court finds that a reasonable jury could
> disagree as to the immediate threat factor. Summary judgment on this
> issue is inappropriate. *Gonzalez* [*v. City of Anaheim*, 747 F.3d 789,
> 797 (9th Cir. 2014)] (denying summary judgment where question of
> fact existed only as to the immediacy of threat factor).

(1-ER at 6:23-7:20).

That the district court also briefly addressed the "clearly established" prong of

qualified immunity does not place Appellants' appeal within this Court's

jurisdiction. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("[I]mmediate appeal from

the denial of summary judgment on a qualified immunity plea is available when

the appeal presents a 'purely legal issue. . . .' However, instant appeal is not

available . . . when the district court determines that factual issues genuinely in

dispute preclude summary adjudication."). Appellants' reliance on *Wilkinson v.*

*Torres*, 610 F.3. 546, 551 (9th Cir. 2010), as a factually analogous case, shows that

Appellants do not accept Appellees' version of the facts. The district court

correctly viewed the facts in the light most favorable to Plaintiffs-Appellees as the

non-moving party, and drew justifiable inferences in their favor. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255, 269 (1986) ("The evidence of the

nonmovant is to be believed."). In doing so, the district court stated:

> Carroll 'cannot credibly argue that the prohibition on the use of
> deadly force under those circumstances was not clearly established' at
> the time of the shooting. *Garner*, 471 U.S. at 21 (holding that it is
> unconstitutional for an officer to shoot a suspect who does not

23

reasonably pose a threat, even if that suspect is fleeing). Carroll's reliance on *Wilkinson* is misplaced. There, the *Wilkinson* court, reviewing the facts in the light most favorable of the plaintiff, determined that (1) the officer saw his partner 'fall,' (2) the officer worried that the partner had been run over and that the van would 'arc' back toward the partner, and (3) the suspect vehicle was in motion at the time the shots were fired. These are different facts from the facts here, when viewed in the light most favorably to Plaintiffs. A reasonable jury could find that Carroll unreasonably believed Decedent posed a significant threat of bodily harm to Thranum. And if a jury were to make such a finding, clearly established law would not have authorized the use of deadly force. Carroll is not entitled to judgment as a matter of law on qualified immunity.

(1-ER at 8-7:19).

If this Court were to exercise jurisdiction over the instant appeal based on qualified immunity, then this Court must resolve all factual disputes in favor of Appellees in order to "decide the legal question as to whether [Officer Carroll's] alleged conduct violated clearly established law." *Cunningham*, 345 F.3d at 807; *see*, *e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007); *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (exercising jurisdiction over the defendant's interlocutory appeal by crediting all of the plaintiff's facts, leaving only the legal issue to decide). This includes resolving the facts as follows: Mr. Lopez did not engage the officers in a vehicle pursuit; Mr. Lopez's vehicle only reversed a short distance; Mr. Lopez only reversed in response to Officer Carroll pointing his Taser at Mr. Lopez without warning; at the time of the shooting, Mr. Lopez's vehicle was stopped, was in park, and was pinned from behind by Officer Thranum's vehicle; Officer Carroll did not see Officer Thranum fall; Officer

Thranum never went to the ground; Officer Carroll did not have an objectively reasonable belief that Thranum was about to be run over by Mr. Lopez's vehicle; Officer Carroll came up with his story that he thought Office Thranum was under Mr. Lopez's vehicle only after he consulted with attorneys; Mr. Lopez's vehicle did not run over Officer Carroll's foot; Officer Carroll did not give Mr. Lopez a verbal warning that deadly force would be used; the shooting violated Officer Carroll's training. The Court has urged special caution to ensure that the defendants are "not taking advantage of the fact that the witness most likely to contradict [their] story—the person [who is] dead—is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). As Mr. Lopez could not speak for himself, the district court was correct in "carefully examine[d] all the evidence in the record . . . to determine whether [Officer Carroll's] story is internally consistent and consistent with other known facts." *Id.*; *see also Gonzales v. Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014) (en banc).

Even if this Court exercises jurisdiction over Officer Carroll's appeal of the denial of qualified immunity, it should not exercise jurisdiction over the City of Mesa's appeal of the denial of summary judgment on Appellees' battery claim. Decisions that do not end the litigation on the merits—like the district court's denial of summary judgment on Appellees' battery claim—are not final appealable orders under 28 U.S.C. § 1291. *See, e.g.*, *SEC v. Capital*

*Consultants LLC,* 453 F.3d 1166, 1170 (9th Cir. 2006). Appellants argue that this Court should exercise pendant jurisdiction over the battery claim because it is "inextricably intertwined" with the qualified immunity issue. However, the Court "interpret[s] the 'inextricably intertwined' standard narrowly" and applies it in "extremely limited" circumstances. *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1109 (9th Cir. 2016); *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000) ("We have consistently interpreted 'inextricably intertwined' very narrowly."). "The standard is only satisfied where the issues are (a) . . . so intertwined that [the Court] must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Puente Ariz*, 821 F.3d at 1109*; Hernandez v. City of San Jose*, 897 F.3d 1125, 1139–40 (9th Cir. 2018). Whether Officer Carroll is entitled to qualified immunity will not necessarily resolve the issue of whether he is liable for battery, and the two issues may be determined independently. Therefore, the two issues are not "inextricably intertwined," and this Court also should not exercise pendent jurisdiction over Appellees' battery claim.

## III. THE DISTRICT COURT APPROPRIATELY DENIED QUALIFIED IMMUNITY WITH RESPECT TO APPELLEES' FEDERAL CLAIMS.

Appellants bear the burden of establishing that they are entitled to the affirmative defense of qualified immunity. *Crawford-El v. Britton*, 523 U.S. 574,

587 (1998). The inquiry acknowledges that only reasonable mistakes can be made as to the legal constraints on official conduct because it is sometimes difficult for an official to determine how the relevant legal doctrine will apply to the factual situation the official confronts. *See Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1032 (2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). "[S]ince a reasonably competent public official should know the law governing his conduct," qualified immunity does not apply when the relevant law is clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982); *see Butz v. Economou*, 438 U.S. 478, 506 (1978).

The Supreme Court in *Saucier* outlined a two-step approach to qualified immunity. Courts have discretion to decide which qualified immunity prong to address first. *Id.* at 1149. One step requires the court to ask whether, taking the facts "in the light most favorable to the party asserting the injury, [] the facts alleged show the [officers'] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201; *Millender v. Cnty. of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009). The other step requires the court, taking the non-moving party's facts as true, to determine whether the shooting violated clearly established law and basic police training. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" is whether the state of the law gave the defendant "fair warning" that his alleged conduct was unconstitutional). This Court should affirm the district court's

denial of qualified immunity because (1) it cannot be stated as a matter of law that Officer Carroll did not use excessive force; and (2) it was clearly established that shooting at the driver of a stationary vehicle with no person in the vehicle's path would violate the constitution.

### A. THE SHOOTING WAS EXCESSIVE AND UNREASONABLE

When evaluating a 42 U.S.C. §1983 excessive force claim, the inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 397); *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). Factors to consider on balance include whether the suspect posed an immediate threat to the safety of the officers or the public, the availability of alternative methods to effectuate an arrest or overcome resistance, and whether the officer gave a warning that deadly force would be used. *Graham*, 490 U.S. at 396;

*Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres*, 648 F.3d at 1124. [W]hile courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.*

The first *Graham* factor is the seriousness of the crime at issue. In the instant case, the officers were not responding to a serious crime, and there was no vehicle pursuit. Officer Carroll had no information that Mr. Lopez had injured anyone and no information that Mr. Lopez was armed with any weapon. Next, pursuant to *Bryan v. McPherson*, the most important *Graham* factor under the facts of this case is whether Mr. Lopez or his vehicle posed an immediate threat of death or serious bodily injury to Officer Carroll, Officer Thranum, or others. "A simple statement by an officer that he fears for . . . the safety of others is not enough; there must be *objective* factors to justify such a concern." *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001) (emphasis added). As it applies to the facts of this case, Officer Carroll's subjective fear that Officer Thranum would be struck by Mr. Lopez's vehicle is insufficient to justify any of his nine shots. An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.* Basic police officer training and Peace Officer Standards and Training ("POST") teach that deadly force can only be used in an

immediate defense of life situation, as a last resort in the direst of circumstances, when no other reasonable options are available.

On Appellees' facts, the nine shots were excessive and unreasonable because no person, including Officer Thranum, was not in the path of Mr. Lopez's vehicle at any point, and Officers Thranum and Carroll were in a position of safety at the time of all the shots. Here, the only movement Mr. Lopez's vehicle made was reversing a short distance, and the reasonable inference is that Mr. Lopez only reversed in response to Officer Carroll suddenly pointing his Taser at him without warning. At the time of the shooting, after Mr. Lopez reversed a short distance, Mr. Lopez's vehicle was stopped and pinned in from behind by Officer Thranum's vehicle. Circumstantial evidence also shows that Mr. Lopez's vehicle was in park at the time of the shooting. Police officers are trained to stay out of the path of a vehicle they think might move, and Officer Carroll should have known that Officer Thranum would follow her training and stay out of the path of Mr. Lopez's vehicle, which she did. Police officers are also trained not to shoot at the driver of a vehicle, and Officer Carroll violated that training. Mr. Lopez was not attempting to flee during this incident; nevertheless, this would not justify the shooting, as officers are trained that they cannot shoot a driver because the driver is attempting to flee the area.

30

Also important to the *Graham* analysis, Officer Carroll did not give a warning that deadly force would be used prior to firing his shots, even though it would have been feasible to do so under the facts of this case, where no person was in the path of Mr. Lopez's vehicle or about to be run over by Mr. Lopez's vehicle. Further, "police are 'required to consider what other tactics if any were available'" to handle the situation. *Headwaters v. County of Humboldt,* 240 F.3d 1185, 1204 (9th Cir. 2000). Here, a reasonable jury could conclude that Officer Carroll could have used less intrusive means to accomplish his objective, including simply moving out of the way rather than shooting. Officer Thranum did in fact move out of the way and was not in the path of the vehicle during any of the shots; therefore, Officer Carroll should not have fired any shots, and the Ninth Circuit should affirm the district court's order and allow the case to proceed to trial.

### B. THE SHOOTING VIOLATED THE FOURTEENTH AMENDMENT

"Official conduct that 'shocks the conscience' in depriving parents of their interest [in the companionship and society of their children] is cognizable as a violation of due process." *Id*. (citing *Porter v. Osbourne,* 546 F.3d 1131, 1137 (9th Cir. 2008)). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Porter*, at 1137. Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* at 1130.

Appellees' wrongful death claim for interference with their relationship with Mr. Lopez under 42 U.S.C. § 1983 and the Fourteenth Amendment survives regardless of whether the "deliberate indifference" or "purpose to harm" standard applies. On Appellees' facts, Officer Carroll had time to deliberate before shooting, including because no person was about to be run over by the vehicle, and the vehicle was stopped and in park at the time of the shooting. Where the facts regarding practical deliberation are disputed, only the jury can determine which of the two "shocks the conscience" standards apply. *Greer v. City of Hayward*, 229 F. Supp. 3d 1091 (N.D. Cal. 2017); *Duenez v. City of Manteca*, 2013 WL 6816375 *14-15 (E.D. Cal. Dec. 23, 2013); *see also C.E.W. v. City of Hayward*, 2015 WL 1926289 *13 (N.D. Cal. Apr. 27, 2015). Even if the jury determined that the "purpose to harm" standard applies, a reasonable jury could conclude that Officer Carroll shot Mr. Lopez because he was enraged that Mr. Lopez reversed his vehicle. A reasonable jury could conclude that shooting the driver of a vehicle

under these facts would serve no legitimate law enforcement purpose, including because police officers are trained that shooting a person who is operating a vehicle could incapacitate the driver and cause a more dangerous situation, and because Mr. Lopez's vehicle was already stopped.

In *A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013), a vehicle pursuit terminated with the suspect's (Eklund) vehicle contained in a dead end. Eklund refused to get out of the car and verbally threatened officers, and an officer fired twelve shots. 712 F.3d at 458. The *A.D.* court denied qualified immunity on the Fourteenth Amendment claim because there was evidence that Eklund's vehicle was stopped at the time of the shooting, meaning there was no immediate defense of life situation. *Id.* Appellees' case is particularly stronger than *A.D.*, including because Mr. Lopez did not lead the officers on any pursuit and did not verbally threaten the officers. Just as Eklund's vehicle was contained at the end of the pursuit, it is undisputed that Mr. Lopez's vehicle was stopped at the time of the shooting and pinned in from behind by Officer Thranum's vehicle, and taking all reasonable inferences in Appellees' favor, Mr. Lopez's vehicle was in park at the time of the shooting, and there was no person in the path of Mr. Lopez's vehicle or about to be struck by the vehicle. Officer Carroll should have known that Officer Thranum would follow her police training and remain out of the path of Mr. Lopez's vehicle, in a position of safety, which she did. Therefore, there was no

legitimate law enforcement purpose in shooting Mr. Lopez. Officer Carroll himself escalated the situation and violated his training when he leaned into the open passenger window of Mr. Lopez's vehicle and pointed a Taser at Mr. Lopez just prior to Mr. Lopez reversing. A reasonable jury could infer that Officer Carroll fired to teach Mr. Lopez a lesson for reversing into the police vehicle, not because he thought that Officer Thranum had been struck.

### C. QUALIFIED IMMUNITY MUST BE DENIED UPON A FINDING OF DISPUTED ISSUES OF MATERIAL FACT

As set forth in detail above, the district court's denial of Defendants'-Appellants' motion for summary adjudication as to Plaintiffs'-Appellees' remaining claims was based on a finding of disputed issues of material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (holding "the moving party, [Appellants] had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party"). Qualified immunity must be denied when the district court finds the existence of disputed issues of material fact. *See Johnson*, 515 U.S. at 313; *Glenn v. Washington Cnty.*, 673 F.3d 864, 870, n.7 (9th Cir. 2011) (citing *Espinosa*, 598 F.3d at 532); *Cunningham*, 345 F.3d at 809; *Santos v. Gates*, 287 F.3d 846, 855, n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of

34

disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact). Appellants failed to meet their burden, such that reversing the district court's denial of qualified immunity would violate well-established precedent. *See Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting) (the reasonableness of an officer's belief ". . . is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law. . .'"); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate").

Here, the district court recognized that a number of material factual disputes exist, including but not limited to: (1) whether an objectively reasonable officer in Carroll's position would have believed that Officer Thranum was underneath Mr. Lopez's vehicle or had been struck by the vehicle; (2) whether Officer Carroll should have known that Officer Thranum would follow her training and remain out of the vehicle's path; (3) whether Officer Carroll went to the ground at any point during this incident; (4) whether Mr. Lopez's vehicle ran over Officer Carroll's boot; (5) whether Carroll escalated the situation when he pointed a Taser at Mr. Lopez without warning; (6) whether it was feasible for Officer Carroll to give Mr.

Lopez a verbal warning prior to using deadly force; (7) whether Officer Carroll failed to consider the backdrop of the shooting when he fired, in that had Officer Thranum not tactically repositioned as trained, she would have been struck by shots; (8) whether Mr. Lopez's vehicle was in park at the time of the shooting; (9) whether the shooting violated Officer Carroll's police training with respect to the use of deadly force and shooting at vehicles or their drivers; (10) whether there were reasonable alternative measures available rather than shooting; and (11) whether this was an immediate defense of life situation.

### D. THE SHOOTING VIOLATED CLEARLY ESTABLISHED LAW.

Qualified immunity "focuses on the objective legal reasonableness of an official's acts," as the Court "provides no license to lawless conduct." *Harlow*, 457 U.S. at 819. "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.* Thus, Officer Carroll is expected to know that shooting at the driver of a stationary vehicle when no person is in the path of the vehicle would violate the constitution. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson*, 483 U.S. at 640. To determine that the law was clearly established, the Court need not look to a case with identical or even

36

"materially similar" facts. *Hope*, 536 U.S. at 739-41, 754; *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003); *see also Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

Further, the Supreme Court "has firmly rejected the notion that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1018 (9th Cir. 2017); *Brosseau*, 543 U.S. at 206 (Stevens, J., dissenting) ("The Court's search for relevant case law applying the *Garner* standard to materially similar facts is both unnecessary and ill advised.") (quoting *Anderson*, 483 U.S. at 640 (1987)). In fact, even "[c]losely analogous preexisting case law is not required to show that a right was clearly established." *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000). "Otherwise, [officials] would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle*, 272 F.3d at 1285. In other words, there may be no published cases with facts exactly like these because of the obviousness of the illegality. *See Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002); *K.H. Through Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir. 1990) ("The easiest cases do not even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from

damages liability because no previous case had found liability in those circumstances."). Accordingly, the "standard is one of fair warning: where the contours of the right have been defined with sufficient specificity that a state official had fair warning that her conduct deprived a victim of his rights, she is not entitled to qualified immunity." *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003); *see also Hope*, 536 U.S. at 740 n.10.

Nonetheless, Appellees provide below specific cases of similarly situated decedents that "place the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 742 (2011). Appellees' case is even stronger than the most factually analogous cases because Mr. Lopez did not engage in a high-speed pursuit, Mr. Lopez's vehicle was stopped and in park at the time of the shooting, no person was in the path or potential path of Mr. Lopez's vehicle, Mr. Lopez was unarmed, and the officers were not responding to a serious crime. It is clearly established that shooting at a vehicle where, as here, the vehicle and its driver pose no immediate threat of death or serious bodily injury, constitutes excessive force. *See, e.g., Villanueva v. California*, 986 F.3d 1158, 1172 (9th Cir. 2021) ("In light of [the 1996 case] *Acosta*, all reasonable officers [in 2016 at the time of the *Villanueva* shooting] would know it is impermissible to shoot at a slow-moving [or stopped] car when he could 'simply step[] to the side' to avoid danger."); *A.D.*, 712 F.3d at 458; *Adams*, 473 at 994 (shooting driver of slow moving car not reasonable

where driver posed no threat); *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1146-47 (9th Cir. 1996) (shooting at slow moving car not reasonable where officer could move out of car's path); *Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008) (denying qualified immunity because a reasonable officer would not have believed that a vehicle moving slowly in a non-aggressive manner could have posed a threat of serious physical harm); *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005) (denying qualified immunity because although the defendant officer was in the path of the decedent's vehicle, the defendant was not in any danger when he shot four times at the moving vehicle); *Kosakoff v. City of San Diego,* No. 08-CV-1819, 2010 WL 1759455, at *6 (S.D. Cal. Apr. 29, 2010) (denying qualified immunity in part because the car was moving slowly and the shots took place after the officer was already in a position of safety); *see also Tennessee v. Garner*, 471 U.S. 1 (1985) (deadly force only reasonable to prevent escape where officer has probable cause to believe suspect poses threat of serious physical harm); *cf. Mullenix v. Luna*, 136 S. Ct. 305, 312 (2015) (granting qualified immunity to officer who shot vehicle in high speed chase and distinguishing case from "[s]everal [that] involve suspects who may have done little more than flee at relatively low speeds"). The instant case is even stronger than the foregoing cases because Mr. Lopez's vehicle was stopped and in park at the time of the shooting, making Officer Carroll's use of force obviously excessive.

As the district court correctly found, Appellants' reliance on *Wilkinson* is misplaced. The chaotic situation in *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) is inapposite. In *Wilkinson*, "a fleeing minivan temporarily came to a stop in a muddy yard after crashing into a telephone pole," and the shooting officer observed another officer approach the minivan and fall to the ground in slippery mud. *Villanueva*, 986 F.3d at 1172. The driver in *Wilkinson* continued to attempt to accelerate, as evidenced by the minivan's wheels spinning and throwing up mud. *Id*. In holding that the use of deadly force in *Wilkinson* was reasonable, the Ninth Circuit emphasized that the shooting officer saw another officer fall to the ground, that the driver was "revving" the engine, that the muddy yard was slippery, and that an officer was either lying on the ground nearby or disoriented and unable to move out of the way. 610 F.3d at 541. By contrast, at the time of Officer Carroll's shots, Mr. Lopez's vehicle was on a paved surface and had come to a complete stop, and both Officers Thranum and Carroll were to the side of Mr. Lopez's vehicle, out of its path. Officer Carroll's subjective belief that Lopez's vehicle struck Thranum or was going to accelerate toward either officer is not supported by the evidence. Prior to the shots being fired, Officer Thranum followed her training and stepped to the side of Mr. Lopez's vehicle, out of its path and in a position of safety. Officer Carroll should have known that Officer Thranum was not in the

path of the vehicle based on her previous position and officers' training not to stand in the path of a vehicle that the officer thinks might move.

### E. CITY OF MESA POLICIES FURTHER SUPPORT THE OBVIOUSNESS THAT THE LAW WAS CLEARLY ESTABLISHED.

Appellants' policies are important to consider in the context of qualified immunity. *Hope*, 536 U.S. at 741-42, 744 (considering department regulations and DOJ advisory opinion in concluding the conduct at issue violated clearly established constitutional rights). "An [official] who unlawfully implements an official policy or ordinance in an egregious manner or in a manner which clearly exceeds the reasonable bounds of the policy is not entitled to qualified immunity, whether or not there is a case on point declaring such actions unconstitutional." *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994). "In other words, even in the absence of relevant case law, if the manner of implementation of an otherwise constitutional policy is not only unconstitutional but patently so, the officer will be deemed to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow*, 457 U.S. at 818). An officer who makes a conscious decision to violate basic training guidelines should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed his or her decision to be lawful. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was

objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable."). Here, as set forth in detail above, Officer Carroll violated his own policy, POST standards, and basic police officer training when he fired at a vehicle notwithstanding that no officer was in its path during its any of the shots. For that reason, along with each and every reason addressed above, this Court should affirm the district court's denial of qualified immunity to Officer Carroll as to Appellees' Fourth and Fourteenth Amendment claims.

### IV. THE DISTRICT COURT APPROPRIATELY DENIED SUMMARY JUDGMENT AS TO APPELLEES' BATTERY CLAIM

This Court should decline to exercise pendant jurisdiction over Appellees' battery claim because it is not a final, immediately appealable decision, and qualified immunity does not apply to Appellees' battery claim. Alternatively, this Court should affirm the district court's ruling and hold that Officer Carroll's use of deadly force against Mr. Lopez was unreasonable under Arizona law for the same reasons that the shooting violated Mr. Lopez's Fourth Amendment right to be free from excessive force. It is well established that an officer commits a battery when he exceeds his lawful right to use force. Arizona's justification statutes (A.R.S. § 13-409, § 13-410) mirror the Fourth Amendment standard for the use of force, and excessive force therefore removes the officer from the protections of § 13-409. *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1016 (D. Ariz. 2012). In

denying summary judgment on Appellees' battery claim, the district court correctly

stated:

> Whether deadly force was justified turns on whether Carroll reasonably believed that it was necessary (1) to defend himself or another from what he reasonably believes is an immanent use of deadly force or (2) to effect an arrest or prevent escape in certain situations. A.R.S. § 13-410(C). Again, whether Carroll reasonably believed himself or Thranum subject to the imminent use of deadly force is genuinely disputed. And by the time Carroll used force, Plaintiffs argue, the vehicle had come to a complete stop and Decedent had not resisted arrest, genuinely disputing whether it was reasonable to believe deadly force was necessary. The City is vicariously liable for the acts of Carroll that occurred during the course and in the scope of his employment as a City Police officer.

(1-ER at 12:16-25).

As described in detail above, there was no immediate defense of life situation

in this case; therefore, Officer Carroll's use of deadly force against Mr. Lopez was

unreasonable and unjustified, subjecting him to civil liability. Officer Carroll shot

Mr. Lopez when Mr. Lopez was seated in a stationary vehicle when no person was

in the path of that vehicle, without giving Mr. Lopez a verbal warning that deadly

force would be used. A reasonable jury could find that any belief by Officer

Carroll that deadly force was necessary in this case was objectively unreasonable

for the reasons stated above in conjunction with Appellees' Fourth Amendment

claim. Moreover, if a presumption applies under Arizona law, then the burden

shifts to Appellees to produce evidence to rebut the presumption, although

Appellants retain the burden of persuasion. *See Ryan v. Napier*, 245 Ariz. 54, 425

P.3d 230 (2018). Appellees have more than rebutted any presumption that Officer Carroll acted reasonably and have raised credibility issues surrounding Officer Carroll's version of the events. For these reasons, this Court should affirm the district court's ruling.

## **CONCLUSION**

The district court properly found that Appellants are not entitled to summary judgment because a reasonable jury could find that Appellants used excessive and unreasonable force. Additionally, disputed issues of fact preclude granting qualified immunity to Officer Carroll, and qualified immunity does not apply to Appellants' battery claim. Appellants' violation of Mr. Lopez's and Appellees' Constitutional rights was clearly established at the time of the incident. Accordingly, Appellees respectfully request that this Court either dismiss the instant appeal for lack of jurisdiction or, in the alternative, assume the facts in the light most favorable to Appellees and affirm the district court's ruling.

Respectfully submitted,

DATED: January 18, 2023                    LAW OFFICES OF DALE K. GALIPO


                                    By: */s/    Dale K. Galipo*

                                        Dale K. Galipo, Esq.
                                        Renee V. Masongsong
                                        *Attorneys for Appellees*

44

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-15278

I am the attorney or self-represented party.

**This brief contains** | 11,367 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(X) complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Renee V. Masongsong | **Date** | 1/18/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*